```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON
```

**SAMUEL SCOTT MILLER,**

    **Plaintiff,**

**v.**                                      **CIVIL ACTION NO. 2:08-1134**

**CONNECTICUT GENERAL LIFE**
**INSURANCE COMPANY,**
**d/b/a CIGNA,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

Pending before the court is the motion to dismiss of defendant Connecticut General Life Insurance Company ("CIGNA"). (Doc. Nos. 5.) For the reasons set forth below, the court denies the motion.

### I.   Factual and Procedural Background

Plaintiff Samuel Scott Miller, a resident of Charleston, West Virginia, was a member of a settlement class in a class action brought in the United States District Court for the Central District of California. (Doc. No. 1 at 2.) The litigation related to alleged misrepresentations made by CIGNA and its agents to purchasers of life insurance products. (Id.) In that action, styled "In re: Connecticut General Life Insurance Company Premium Litigation, MDL Docket No. MDL-1136," the District Court entered a February 12, 1997, Final Order and Judgment approving the parties' settlement agreement and retaining jurisdiction as follows: "Without in any way affecting

the finality of this Final Order and Judgment, this Court hereby retains jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order and Judgment, and for any other necessary purpose."[1]  (Doc. No. 5 Ex. B at 5.)

The settlement agreement provided for an alternate dispute resolution process, the final stage of which was arbitration. Pursuant to the terms of the settlement agreement, which directed that arbitration should be conducted within fifty miles of the residence of each plaintiff (Doc. No. 8 Ex. A at 21), plaintiff and defendant participated in arbitration in Charleston in April 1999 with Gerald Aksen serving as arbitrator.  On May 5, 1999, Mr. Aksen issued an arbitration award in favor of plaintiff. (Doc. No. 8 Ex. B.)  Aksen granted Mr. Miller a score of 4, which, under the terms of the settlement, meant that Miller had been awarded "an insurance product consistent with the Agent's alleged representation, thus providing the policy owner with the full 'benefit of the bargain.'"  (Id. at 3.)

The representation which Mr. Miller alleges was made to him is set forth in the Statement of Policy Owner he submitted to the arbitrator, attached to the Complaint as Exhibit B.  It provides

---

[1] The court referred to this order as the "*Spitz* Final Order," because the litigation originated as *Spitz v. Connecticut General Life Insurance Company* before being consolidated with other related litigation by the Panel on Multidistrict Litigation on December 9, 1996.  (Doc. No. 8 Ex. D.)

in pertinent part as follows:

> In late, [sic] 1991, Mr. Miller was approached by Charles Ross, an insurance agent with Pittsburgh Investment Brokers, who inquired as to Scott Miller's life insurance needs. . . .
>
> Mr. Ross met with Scott Miller at the Miller residence and advised Scott Miller of a Connecticut General Life Insurance Company ("CIGNA") insurance product whereby Mr. Miller would make annual premium payments of $5,000.00 per year for fifteen (15) years on a whole life insurance policy. The policy would have a split premium of $3,184.00 annually for the $300,000.00 base policy, plus a rider of $1,816.00 annually providing for increased death benefits over time. A written illustration was used by Mr. Ross at his meeting with Scott Miller, a copy of which is found [as Exhibit C to the Complaint].
>
> This illustration reflects representations made by Mr. Ross under the proposed CIGNA Preference II whole life policy, that Scott Miller would make annual premium payments of $5,000.00 per year for fifteen (15) years. There would be no further premium payments required thereafter, but the policy would continue in force and effect through age 70. This is reflected on page 59 under "Net Annual Premium" illustrating annual $5,000.00 payments until year 16 when Scott Miller will have reached the age of 47. The net Annual Premiums after year 16 through age 70 would be $0.00.
>
> In conjunction with Scott Miller's need to cover his children's educational expenses, in each year 16 through 23, Scott Miller could borrow $16,000.00. Mr. Ross represented to Scott Miller that this was a "tax free loan." Scott Miller understood that each of the $16,000.00 annual loans would not be taxable to him as income. This is noted in Mr. Ross' handwriting on the illustration.
>
> In addition, Mr. Ross showed and represented to Scott Miller that the $16,000.00 loans taken over each of eight (8) years did not need to be repaid to CIGNA to maintain the policy as illustrated.
>
> After taking the loans, and continuing thereafter, Scott Miller understood that he would not have to make any more premium payments, but that the policy would continue to

> have substantial cash surrender value; a minium [sic] cash surrender value of $67,538.00 and a substantial death benefit of up to $648,658.00 in year 16, after the first loan, if the then current 9.5% interest remained in effect.
>
> After the last $16,000.00 loan was taken in year 23, Mr. Miller understood that the policy would remain in full force and effect accumulating cash surrender values and maintaining a death benefit as demonstrated in the illustration.

(Doc. No. 1 Ex. B.)

In the instant action, Mr. Miller alleges that, although he paid the $5,000.00 annual premium for each of the policy years numbered 1 through 15, CIGNA "failed and refused to honor the Arbitration award." Plaintiff accordingly seeks a declaratory judgment enforcing the arbitration award and the insurance contract "so as to provide an insurance product to Mr. Miller that is consistent with the agent's misrepresentations so that Mr. Miller will have the full 'benefit of the bargain.'" (Doc. No. 1 at 5.) There being no dispute as to the diversity of the parties, nor the amount in controversy, plaintiff alleges that this court has jurisdiction pursuant to 28 U.S.C. § 1332.

Nonetheless, CIGNA filed a motion to dismiss, arguing that the California court's 1997 order – the "*Spitz* Final Order" – operated to deprive this court of jurisdiction over the matter. (Doc. No. 5.) Plaintiff responded, noting that the California court had since entered an order on March 1, 2006, divesting itself of jurisdiction over ongoing issues related to the

settlement agreement.[2]  (Doc. No. 8.)  In its reply, defendant argues that the California court intended its March 2006 divestment of jurisdiction to apply only to a motion to enforce the settlement agreement filed by CIGNA with respect to class members Owen and Dianne Ramsey ("the Ramseys").  (Doc. No. 11.)  Defendant further argues that, in the event the court finds it has jurisdiction over this case, it should remand the matter to the arbitrator for interpretation of his arbitration award.  (Id.)  The parties subsequently filed surreply briefs (Doc. Nos. 15, 17 Ex. A), both of which the court has considered.[3]

## II. **Analysis**

In February and March 2006, the California court took up CIGNA's motion to enforce the *Spitz* Final Order against the Ramseys, who had filed a state court action which CIGNA contended was precluded by the settlement agreement.  (Doc. No. 8 Ex. D.)  The court's March 2006 order, entitled "Memorandum of Decision

---

[2] Plaintiff also argues in his response that the California court did not intend, by way of its 1997 order, to retain jurisdiction for purposes of enforcing arbitration awards in favor of class claimants.  (Doc. No. 8 at 2.)  Because the court finds that the California court later divested itself of whatever jurisdiction it earlier retained, it need not address the scope of the 1997 order's retention of jurisdiction.

[3] Also pending at this time are CIGNA's motion to file its reply brief out of time (Doc. No. 10), as well as defendant's motion for leave to file a response to plaintiff's surreply (Doc. No. 17).  The court **GRANTS** both motions, and notes that it has considered both the reply brief and the response to plaintiff's surreply, which was attached to defendant's motion as Exhibit A.

and Final Order Divesting Court's Jurisdiction Over Enforcement and/or Interpretation of the *Spitz* Final Order," followed Judge John F. Walter's oral ruling divesting the court of jurisdiction and denying CIGNA's motion to enforce as moot. (Id.)

After briefly referring to the Ramseys' particular situation in the opinion's opening paragraph, Judge Walter proceeded to summarize the history of the *Spitz* litigation, its consolidation by the Panel on Multidistrict Litigation, the settlement reached by the parties, and the court's 1997 Final Order incorporating the terms of the settlement. (Id.) Judge Walter concluded as follows:

> Since the Final Order was signed almost a decade ago, all of the executory provisions of the Final Order – the notices to the class, the reformation of the [CIGNA] policies pursuant to the terms of the Settlement, the opt-out procedure and the ADR claim filing procedure – have been fully performed. The only remaining aspect of the Final Order involves the Court's discretionary retention of jurisdiction to enforce and interpret the Final Order. The Court finds that no further purpose is served by continuing to retain jurisdiction over this matter and therefore, the Court divests itself of jurisdiction over the enforcement and interpretation of the Final Order. See Arata v. Nu Skin International, Inc., 96 F.3d 1265, 1269-70 (9th Cir. 1996).

(Id.)

At no point does the March order limit its force to the Ramseys' case; indeed, it makes no mention of the Ramseys after the initial paragraph. The only reasonable interpretation of this order, therefore, is that the California court intended to

divest itself entirely of the jurisdiction it had retained in the *Spitz* Final Order in February 1997.

Defendant cites an opinion of the United States District Court for the District of Maryland dismissing a policyholder's case on the basis of the California court's 1997 order retaining jurisdiction. (Doc. No. 6 at 8-9 (citing Magnolia v. Connecticut Gen. Life Ins. Co., 157 F. Supp. 2d 583, 587 (D. Md. 2001).) That case, however, was decided well before Judge Walter's divestment order, and defendant cites no subsequent cases in support of its position.

With regard to defendant's alternative argument that the court should remand this matter to the arbitrator for clarification, CIGNA cites Burlington Ins. Co. v. Trygg-Hansa Ins. Co., 261 Fed. Appx. 631, 633-34 (4th Cir. 2008), in which the Fourth Circuit held that a court may take such action where an arbitration award is ambiguous. CIGNA argues that plaintiff's Complaint alleges simply that CIGNA refused to honor the arbitration award, without specifying the manner of CIGNA's breach. (Doc. No. 11 at 9.)

The court is not persuaded at this time that the arbitrator's award was ambiguous. Although the award letter, itself, is concise, Mr. Miller's score of 4 – which entitles him to an award consistent with the "alleged representation" – necessarily incorporates plaintiff's detailed description of the

representations he alleges were made to him.  To the extent CIGNA argues that plaintiff's Complaint is the source of the ambiguity, the court is likewise unpersuaded.  It appears that plaintiff alleges a claim of the sort contemplated in Sverdrup Corp. v. WHC Constructors, Inc., 989 F.2d 148 (4th Cir. 1993)(addressing action to confirm arbitration award under § 9 of the Federal Arbitration Act, as well as similar actions at law).  See Colonial Penn Ins. Co. v. Omaha Indemnity Co., 943 F.2d 327, 334 (3rd. Cir. 1991)(explaining that remand to arbitrator is limited mechanism to be used sparingly).

### III.  Conclusion

Having determined that the United States District Court for the Central District of California divested itself in March 2006 of jurisdiction over issues arising from the parties' settlement agreement, and because the court is unpersuaded that remand to the arbitrator is appropriate on the current record, the court hereby **DENIES** CIGNA's motion to dismiss for lack of jurisdiction. (Doc. No. 5.)  As set forth above, the court also **GRANTS** defendant's motion to file its reply brief out of time (Doc. No. 10), as well as defendant's motion for leave to file a response to plaintiff's surreply (Doc. No. 17).

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

It is **SO ORDERED** this 11th day of September, 2009.

ENTER:

-8-   _/s/ David A. Faber_
David A. Faber
Senior United States District Judge